**United States Court of Appeals**
**Fifth Circuit**

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

**FILED**

November 23, 2010

Lyle W. Cayce
Clerk

————————————

No. 09-51079

————————————

D.C. Docket No. 1:08-CV-648

*FILED*
*LY*
FEB 1 0 2011
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

SIERRA CLUB, INC.; PUBLIC CITIZEN, INC.,

  Plaintiffs - Appellants

v.

SANDY CREEK ENERGY ASSOCIATES, L.P.,

  Defendant - Appellee

Appeal from the United States District Court for the
Western District of Texas, Austin

Before GARZA and BENAVIDES, Circuit Judges, and LYNN*, District
Judge.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by
counsel.

It is ordered and adjudged that the judgment of the District Court is
reversed, and the cause is remanded to the District Court for further
proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that defendant-appellee pay to plaintiffs-
appellants the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE:

_____

       *District Judge of the Northern District of Texas, sitting by
designation.

**0 4 FEB 2011**

**A True Copy**
      **Attest**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

**By:** _____
           **Deputy**

**New Orleans, Louisiana**

**0 4 FEB 2011**

**REVISED DECEMBER 10, 2010**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 23, 2010

Lyle W. Cayce
Clerk

No. 09-51079

SIERRA CLUB, INC.; PUBLIC CITIZEN, INC.,

Plaintiffs-Appellants,

v.

SANDY CREEK ENERGY ASSOCIATES, L.P.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before GARZA and BENAVIDES, Circuit Judges, and LYNN[*], District Judge.

FORTUNATO P. BENAVIDES, Circuit Judge:

The present case requires the Court to determine whether Sandy Creek's current and ongoing construction of a coal-fired power plant, for which no MACT determination has ever been made, violates the Clean Air Act § 112(g).[1] Because we conclude that § 112(g)(2)(B) prohibits the act of construction, and not merely the commencement thereof, we find that Sandy Creek's current and ongoing

---

[*] District Judge of the Northern District of Texas, sitting by designation.

[1] 42 U.S.C. § 7412(g). This opinion will routinely refer to statutory provisions by their Clean Air Act section numbers (i.e. "section 112"), rather than from the U.S. Code codification (i.e. "42 U.S.C. § 7412").

No. 09-51079

construction of a "major source" without a final MACT determination violates the plain language of the statute. Accordingly, we REVERSE the judgment, and remand to the district court for further proceedings not inconsistent with this opinion.

## FACTS AND REGULATORY/PROCEDURAL BACKGROUND

Defendant Sandy Creek Energy Associates, L.P. ("Sandy Creek") is currently constructing a coal-fired power plant in Riesel, Texas. The Texas Commission on Environmental Quality ("TCEQ") would ordinarily perform a routine case-by-case "MACT determination" prior to the company's commencement of construction on a coal-fired power plant, in order to comply with federal Clean Air Act ("CAA") requirements. *See* 42 U.S.C. § 7412(g)(2)(B) ("No person may construct or reconstruct any major source of hazardous air pollutants, unless the Administrator (or the State) determines that the maximum achievable control technology emission limitation under this section for new sources will be met. Such determination shall be made on a case-by-case basis where no applicable emission limitations have been established by the Administrator."); *see also* 30 Tex. Admin. Code § 116.711(5) & (11) (implementing § 112(g)'s "case-by-case MACT determination" by incorporating it into the State's pre-construction permitting process). Because Sandy Creek's Riesel plant will emit more than ten tons per year of hydrogen chloride--a listed hazardous pollutant under the Act--the Riesel plant falls under § 112(g)'s MACT construction proscription.[2]

---

[2] Section 112(a)(1) defines "major source" as follows:

The term "major source" means any stationary source or group of stationary sources located within a contiguous area and under common control that emits

No. 09-51079

"MACT" refers to "Maximum Achievable Control Technology"–an emission limitation standard for the listed "hazardous" pollutants Congress ordered the EPA to regulate in § 112.  Section 112 requires major sources, like the Riesel plant, to  "comply with technology-based emission standards requiring the maximum degree of reduction in emissions EPA deems achievable, often referred to as 'maximum achievable control technology' or MACT standards." *Nat'l Min. Ass'n v. EPA*, 59 F.3d 1351, 1353 (D.C. Cir. 1995) (quoting 42 U.S.C. § 7412(d)(1)-(2)).  Congress noted that § 112's MACT emissions standards would "be more stringent" than the standards imposed by other provisions of the Act–such as New Source Review or Prevention of Significant Deterioration ("PSD")–and explained this as necessary since the MACT "program is for the control of extremely harmful air pollutants." S. Rep. No. 101-228, at 140 (1989).

Thus, in ordinary circumstances, we would not question whether § 112(g)(2)(B)'s requirement of a case-by-case MACT determination applied to Sandy Creek's Riesel Plant.[3]  The present case, however, presents us with an unusual circumstance.  In March of 2005, the EPA issued a rule removing coal and oil-fired electric utility steam generating units ("EGUs") from the list of

---

or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants.

The question of whether Sandy Creek's Riesel plant qualifies as a "major source" under § 112 is not before this Court since both parties agree the plant will emit enough tons of mercury to qualify the plant as a "major source" under the Act.

[3] In its brief, Sandy Creek conceded that before March of 2005, § 112(g)'s MACT requirement applied to its Riesel plant.

No. 09-51079

sources whose emissions are regulated under § 112.[4]  Thus, although Sandy Creek submitted an application for a MACT determination to TCEQ, TCEQ concluded that, as a result of EPA's Delisting Rule, no such determination was legally required.  On May 25, 2006, TCEQ stated that "[n]o case-by-case MACT determination for the PC boiler is needed because the type of steam generating unit (PC boiler) that Sandy Creek is proposing is not subject to MACT regulation." Sandy Creek then commenced construction on its coal-fired power plant in Riesel, Texas, on January 7, 2008.

One month later, on February, 8, 2008, the D.C. Circuit vacated EPA's March 2005 Delisting Rule, declaring that EPA's decision to remove EGUs from the list of § 112's regulated sources violated "the plain text and structure of section 112."[5]   *New Jersey v. EPA*, 517 F.3d 574, 583 (D.C. Cir. 2008). Consequently, the D.C. Circuit held that EGUs "remain listed under section 112." On March 14, 2008, the mandate issued and the Delisting Rule was officially vacated.  As a result of the D.C. Circuit's decision in *New Jersey*,

---

[4] This agency action became known as the "Delisting Rule," and will be discussed in greater detail below.

[5] The D.C. Circuit recognized that the plain language in § 112(c) meant that "the only way EPA could remove EGUs from the section 112(c)(1) list was by satisfying section 112(c)(9)'s requirements." *New Jersey*, 517 F.3d at 582. The EPA, however, conceded "that it never made the findings section 112(c)(9) would require in order to delist EGUs." *Id.* Consequently, the *New Jersey* Court held that "EPA's purported removal of EGUs from the section 112(c)(1) list therefore violated the CAA's plain text and must be rejected under step one of *Chevron*." *Id.* The vacatur of the Delisting Rule means that EGUs are still legally obligated to comply with § 112(g)(2)(B)'s MACT requirement for any hazardous pollutant they emit. *Id.*

4

No. 09-51079

§ 112(g)'s construction prohibition on "major sources" with no MACT determination once again became applicable to all coal-fired power plants.[6]

Soon thereafter, on August 8, 2008, Plaintiffs Public Citizen, Inc. and Sierra Club, Inc. (collectively, "Sierra Club") filed their complaint in federal district court. In the complaint, the Plaintiffs alleged that Sandy Creek's construction of its coal-fired plant in Riesel was in violation of CAA § 112(g)(2)(B) because Sandy Creek had never obtained a MACT determination for the plant.

Sierra Club filed a motion for summary judgment on March 4, 2009, and then on April 2, 2009, Sandy Creek filed its cross-motion for summary judgment, arguing that the district court should abstain from deciding Sierra Club's § 112(g)(2)(B) challenge pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). On September 28, 2009, the district court issued its Order. Although the district court declined to abstain pursuant to *Burford*, the district court determined that § 112(g)'s requirement for a MACT determination no longer applied to Sandy Creek, and consequently, the district court granted summary judgment in Sandy Creek's favor and denied Sierra Club's motion for summary judgment. Sierra

---

[6] Although the CAA's Citizen Suit Provision, *see* 42 U.S.C. § 7604(a), (f), gives this Court jurisdiction over suits asserting that specific "major emitting facilities" violate the requirements of the CAA, Congress specifically reserved jurisdiction over challenges to EPA's administrative rules and regulations implementing the statute as a whole to the D.C. Circuit Court of Appeals. *See id.* § 7607(b)(1). Congress's decision to designate the D.C. Circuit as the Court with exclusive jurisdiction over challenges to rules such as the Delisting Rule and other "standard-setting actions by the Administrator was to ensure uniformity in decisions concerning issues of more than purely local or regional impact." *Natural Res. Def. Council, Inc. v. EPA*, 512 F.2d 1351, 1357 (D.C. Cir. 1975). Consequently, it is clear, and no party contests, that the D.C. Circuit's vacatur of the Delisting Rule applies unequivocally throughout all of the Federal Circuits.

No. 09-51079

Club timely appealed, asserting that the district court erred when it found that § 112(g)(2)(B)'s requirement for a final MACT determination no longer applies to Sandy Creek. On appeal, Sandy Creek asserts that the district court abused its discretion when it declined to abstain under *Burford*.

We will consider both claims in turn.

## STANDARD OF REVIEW

"We review a grant of summary judgment *de novo*, applying the same legal standard as the district court." *Croft v. Governor of Tex.*, 562 F.3d 735, 742 (5th Cir. 2009) (internal quotations omitted). Summary judgment should be rendered if the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue is material if its resolution could affect the outcome of the action." *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). "In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* Although both parties moved for summary judgment before the district court, "[t]he mere fact that both appellants and appellee moved for summary judgment does not warrant the grant of either motion if the record reflects a genuine issue of fact." *Hindes v. United States*, 326 F.2d 150, 152 (5th Cir. 1964).

## ANALYSIS

The question before this Court is how to interpret and apply § 112(g) to a coal-fired power plant still under construction, when the construction on that plant commenced *before* the D.C. Circuit's decision in *New Jersey*–that is, where the construction of the plant began during a time period in which a MACT

6

No. 09-51079

determination was not required under the EPA's unlawful Delisting Rule–and TCEQ declined to make one. Sandy Creek makes two arguments in support of its position that it should not be required to obtain a MACT determination now. First, Sandy Creek argues that when TCEQ issued Sandy Creek its pre-construction permit on May 25, 2006, it actually made a MACT determination. In the alternative, Sandy Creek also argues that because § 112(g) did not apply to it when it *commenced* construction, § 112(g)'s requirement for a MACT determination does not apply to its ongoing construction. Neither the record, nor the plain language of the statute, support these two positions.

## I.   TCEQ HAS NOT MADE A MACT DETERMINATION

Sandy Creek asserts that its ongoing construction of a coal-fired plant is not in violation of § 112(g)(2)(B) because TCEQ *did* make a MACT determination. In this regard, Sandy Creek conflates a decision *not* to make a MACT determination with an actual final MACT determination that the Act requires. Because TCEQ declared in its May 2006 Final Order that no MACT determination was required, and Sandy Creek's application for a MACT determination and TCEQ's preliminary determination were deficient as they did not contain substantive evaluations of MACT limits or MACT floors for any hazardous air pollutant, this Court finds that TCEQ did not make a proper MACT determination in its May 2006 Final Order.

The district court's factual findings are ambiguous as to whether or not TCEQ made a final MACT determination for Sandy Creek's Riesel plant. The evidence in the record, however, shows that TCEQ did not make a MACT determination for Sandy Creek's Riesel plant. First, the May 2006 Final Order's provision that the MACT determination requirement is inapplicable strongly

7

No. 09-51079

indicates that TCEQ did not make a MACT determination. The TCEQ provided, "[n]o case-by-case MACT determination for the PC boiler is needed because the type of steam generating unit (PC boiler) that Sandy Creek is proposing is not subject to MACT regulation."[7] This May 2006 Final Order thus did not contain a case-by-case evaluation of MACT limits or set a MACT floor for Sandy Creek.

Nothing in the record demonstrates that TCEQ made a MACT determination. Even though we accept as true Sandy Creek's contention that it prepared and submitted an application to TCEQ under the assumption that a MACT determination would be required, that does not constitute evidence that TCEQ actually made the determination. Moreover, Sandy Creek's initial § 112(g) submissions were deficient, in that the application's proposed MACT limits did not include a MACT floor. A BACT limit cannot substitute for a MACT limit because BACT limits do not include a floor as the MACT limits do. *Compare* 42 U.S.C. § 7412(d)(3) (establishing MACT floor) *with* 42 U.S.C. § 7479(3) (defining BACT limits as taking economic costs into account).[8]

---

[7] Most notably, Sandy Creek's own engineer told TCEQ at the administrative hearing that with regard to Sandy Creek's Riesel plant, the "MACT regulation . . . is no longer relevant." R. at 140-41.

[8] We note that the record does support Sandy Creek's assertion that TCEQ conducted a BACT ("Best Available Control Technology") review for the Riesel plant's emission of hazardous air pollutants, including mercury. *See* R. at 693 ("[TCEQ] conducted a best available control technology (BACT) and impacts review."). We do not, however, agree with Sandy Creek's assertion that we should "consider this BACT review as equivalent to MACT review." *Id.* We find § 112's language is clear in its command that MACT–and *not* BACT–be applied to a coal-fired plant's emissions of hazardous pollutants like mercury. Yet even if the language of the statute could be construed as ambiguous, that ambiguity would fall in face of the legislative history reflecting Congress's intent that the more stringent MACT be applied to hazardous pollutants–and not the less stringent BACT. *See* S. Rep. No. 101-228, at 140 (1989) (explaining that previously proposed legislation had "proposed to add a BACT concept to section 112," but Congress determined that "the case-by-case BACT determinations . . . were not sufficiently stringent and in many cases provided no more control than would have been

No. 09-51079

Moreover, a MACT determination requires assessment of every hazardous air pollutant produced by a plant, including for emissions of arsenic, hydrochloric acid, selenium, and cadmium, whereas the alleged MACT determination in Sandy Creek's permit is limited to mercury. *See* 42 U.S.C. § 7412(d)(1).

In its May 2006 Final Order TCEQ did not acknowledge the deficiencies in its preliminary decisions, and instead relied on the Delisting Rule to conclude that no case-by-case MACT determination was necessary for the pulverized coal boiler. R. at 680. A letter from an employee deeming the MACT determination requirement satisfied is clearly insufficient to make up for these inadequacies in the alleged MACT determination. Furthermore, Sandy Creek's argument that TCEQ's decision *not* to make a MACT determination constitutes a MACT determination is without merit. As such, we conclude that TCEQ never made a MACT determination for Sandy Creek.

## II. DEFENDANT'S ONGOING CONSTRUCTION VIOLATES § 112(G)(2)(B)

Furthermore, we find that Sandy Creek's current, ongoing construction of a coal-fired plant–for which Sandy Creek has received no final MACT determination–violates the plain language of § 112(g)(2)(B). We reject Sandy Creek's argument that because it commenced construction when EPA's unlawful

---

required through application of new sources performance standards."). Consequently, Congress created an "emissions limitation based on section 112(d) [that] will, in most cases, be more stringent than a new source performance standard for the same category of sources or pollutants." *Id.* In creating MACT, Congress further noted that the "emissions limitation imposed here, and the standard for control which is its foundation, shall generally be referred to as the 'maximum achievable control technology' or MACT to distinguish it from other requirements in the Act."). As a result, we find that for purposes of § 112, MACT and BACT are *not* equivalent, and a State Agency's BACT review does not satisfy § 112's mandate that "major facilities" receive a MACT determination.

9

No. 09-51079

Delisting Rule was still in effect in January of 2008, the Delisting Rule should continue to preclude the application of § 112(g)(2)(B) to its Riesel plant *now*.

A plain reading of the statute does not support Sandy Creek's position. Instead, a plain reading of § 112(g)'s statutory language leads to the conclusion that the date of commencement of construction on a "major source" does not alter, shift, or eradicate the application of § 112(g)'s prohibition on the construction of that "major source" until, or unless, a MACT determination has been made. Notably, § 112(g)(2)(B) states that "no person may construct or reconstruct any major source of hazardous air pollutants, unless the Administrator (or the State) determines that the maximum achievable control technology emission limitation under this section for new sources will be met." *See also* 40 C.F.R. § 63.43(l)(2) (interpreting § 112(g)(2)(B) to mean that violations are not limited to commencement of construction, but rather, occur "for whatever period the owner or operator is determined to be in violation of [MACT] requirements").

That is, § 112(g)(2)(B) simply states "no person may construct." It does not state "no person may *begin* construction" or "*start* to construct." Section 112(g)(2)(B) does not state that prior to *beginning* construction, the Administrator (or the State) must determine that the MACT emission limitation has been met.[9] Instead, § 112(g)(2)(B) simply renders the act of constructing

---

[9] In this regard, Sandy Creek also argues that § 112(g)(2)(B) does not require that a MACT determination be made *now*, in 2010, since "both TCEQ's and EPA's rules make the § 112(g) case-by-case MACT determination part of the preconstruction permitting process, [and] not an ongoing, freestanding requirement." Essentially, Sandy Creek argues that because TCEQ and EPA have elected to administratively implement the requirements of § 112(g) in regulations that procedurally place MACT determinations in the preconstruction permitting process, any violation of § 112(g) that occurs outside of this regulatory process is no longer a violation of the statute itself. This is an incorrect reading of the interplay of

10

No. 09-51079

itself unlawful–unless and until a MACT determination has been made. The day Sandy Creek actually commenced construction is, therefore, irrelevant to § 112(g)(2)(B)'s current application to Sandy Creek's concurrent and ongoing construction, since § 112(g)(2)(B) prohibits the act of construction itself– and not the *commencement* thereof.[10]

Thus, the question really is not whether Sandy Creek must comply with § 112, but rather, the question is *when* and *how*. Because Sandy Creek is currently constructing a "major source," we find that § 112(g)'s MACT requirement for new sources constitutes the most appropriate application of § 112 to the Riesel plant. In so finding, we find it important to note that any construction Sandy Creek undertook prior to March 14, 2008,[11] should not be considered in violation of § 112(g)(2)(B). We agree with the EPA's position

---

administrative law and statutory interpretation. Even if EPA and TCEQ intended to, they cannot issue regulations that alter § 112(g)(2)(B)'s explicit requirement that no person construct a major source without a MACT determination. It is a fundamental precept of administrative law that an agency action, rule, or regulation "cannot overcome the plain text enacted by Congress." *New Jersey*, 517 F.3d at 583; *see also Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("[T]he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). Section 112(g) says nothing about a preconstruction permitting process. It simply prohibits the act of constructing a major source for which no MACT determination has been made.

[10] Judge Ebel, of the Tenth Circuit Court of Appeals, recently came to the same conclusion when, sitting on the District Court by designation, he reasoned that while ordinarily the statute and its corresponding regulations "requir[e] an operator to obtain a MACT determination before 'construct[ing] or reconstruct[ing]' a major source, nothing in the text indicates that the operator is relieved of the responsibility of complying with the statute after construction begins. '[C]onstruct or reconstruct' are active verbs that have force after the permit is issued and after construction or reconstruction has begun." *Wildearth Guardians v. Lamar Utilities Bd.*, No. 1:09-CV-02974-DME-BNB, 2010 WL 3239242, at *5 (D. Colo. Aug. 13, 2010).

[11] March 14, 2008, is the date the D.C. Circuit issued the mandate in *New Jersey v. EPA*.

11

No. 09-51079

"[that] consideration [must be given] to the effect of prior construction, undertaken in reasonable reliance on now-vacated rules."[12]   However, the Delisting Rule has since been vacated, and consequently, Sandy Creek must now come into compliance with § 112(g)(2)(B). Accordingly, we conclude that Sandy Creek's ongoing construction of a coal-fired power plant–for which no MACT determination has been made–is in violation of § 112(g)(2)(B).

### III. *HARPER* DOES NOT PRECLUDE THE APPLICATION OF § 112(g)

In coming to the conclusion that § 112(g) does not presently apply to Sandy Creek's ongoing construction of a "major source," the district court erroneously relied on the Supreme Court's decision in *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993). In *Harper*, the Supreme Court considered whether a *judicial decision* might have retroactive effect, reasoning "that the nature of judicial

---

[12] Notably, on January 7, 2009, in a letter from Robert J. Meyers, Principal Deputy Assistant Administrator, the Agency stated that:

> [a]lthough these EGUs may have relied in good faith on rules that EPA issued that were subsequently vacated, the Agency believes that these EGUs are legally obligated to come into compliance with the requirements of Section 112(g). . . . We therefore request that the appropriate State or local permitting authority commence a process under Section 112(g) to make a new-source MACT determination in each of these cases. . . . Section 112(g) proceedings ordinarily are concluded before the commencement of any construction activity, so it is reasonable for the permitting authority– under these unique and compelling circumstances, and within the bounds of its discretion under Clean Air Act Section 112(g) and EPA's section 112(g) regulations– to give consideration to the effect of prior construction, undertaken in reasonable reliance on now-vacated rules, in making the case-by-case determination of applicable MACT requirements. . . .

Thus, EPA's interpretation protects the conduct of those who undertook construction in reliance on what is now a vacated rule, while simultaneously effectuating the congressional purpose behind § 112(g)–that is, ensuring that these new major sources of congressionally listed hazardous pollutants will be constructed with "the maximum achievable control technology emission limitation." 42 U.S.C. § 7412.

No. 09-51079

review strips [the Court] of the quintessentially legislative prerogative to make rules of law retroactive or prospective as we see fit . . . ." *Id.* at 95. The Supreme Court held that judicial decisions will only have retroactive effect on those "cases still open on direct review." *Id.* at 97.[13] The *Harper* Court, however, did *not* consider–nor did it create–any guidelines for lower courts to apply when considering the retroactive effect of a restored administrative rule or regulation. Moreover, the district court seemed to assume that to find a violation of § 112(g)(2)(B), it would have to retroactively apply *New Jersey*, but that is not the case. Because § 112(g)(2)(B) applies throughout the construction process, the issue of whether *New Jersey* can be applied retroactively to make illegal the construction that began before the D.C. Circuit decided *New Jersey* is not determinative. We interpret the plain language of § 112(g)(2)(B) to bar Sandy Creek from constructing a coal-fired plant without a final MACT determination.

---

[13] We note that our discussion of *Harper* is limited to our recognition that the Supreme Court's holding in *Harper* is inapposite to the present case before us. In this regard, we recognize that the Supreme Court's jurisprudence on the retroactive application of judicial decisions is more complex than our analysis herein necessitates. *See, e.g., Danforth v. Minnesota*, 552 U.S. 264, 271 (2008) (discussing the "confused and confusing 'retroactivity' cases decided in the years between 1965 and 1987."); *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (explaining that in the context of criminal appeals, "[a] new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.") (internal quotation marks and brackets omitted); *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312 (1994) ("'Judicial decisions have had retrospective operation for near a thousand years.'") (quoting *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910) (Holmes, J., dissenting)). Consequently, it is not our intention to interpret *Harper* as reciting an exhaustive list of judicial decisions that enjoy retroactive application and an exhaustive list of those that do not–and any such reading of our discussion of *Harper* would be unnecessarily broad and mistaken.

13

No. 09-51079

The Supreme Court's decision in *Harper* does nothing to absolve Sandy Creek of its present duty to abide by the requirements in § 112(g)(2)(B).

Furthermore, in its consideration of *Harper*, the district court also concluded that because a Texas state district court affirmed TCEQ's May 2006 Final Order for the Riesel plant's PSD permit, the "direct review of TCEQ's MACT-related findings and conclusions in the final permit was closed on the date that the Texas district court rendered its decision on March 29, 2007." This particular application of *Harper*'s "direct review" rule is erroneous.

That is, for purposes of its "direct review" analysis, the district court has conflated TCEQ's granting of a PSD permit, *see* 42 U.S.C. §§ 7470-7492, with the issuance of a final MACT determination. *See* 42 U.S.C. § 7412(g). On March 29, 2007, the Texas state district court approved TCEQ's granting of a PSD permit. Of course, the state district court's decision to affirm TCEQ's granting of Sandy Creek's PSD permit closed the door to any future challenges to the legal legitimacy of that particular PSD permit. The Texas state district court, however, did *not* affirm TCEQ's MACT determination–mainly because TCEQ never made one. Accordingly, since Sierra Club is challenging Sandy Creek's failure to obtain a MACT determination pursuant to § 112(g)(2)(B)–and because Sierra Club is *not* challenging the legal legitimacy of Sandy Creek's PSD permit–what the Texas state district court affirmed on March 29, 2007, regarding Sandy Creek's PSD permit, does not influence our consideration of Sandy Creek's statutory obligation to obtain a MACT determination. This is

14

No. 09-51079

because the affirmation of this PSD permit said nothing about the legality (or existence of) a MACT determination pursuant to § 112(g).[14]

Accordingly, a plain reading of the statute demonstrates that securing a PSD permit does not obviate the need to comply with § 112, and here, where Sandy Creek has not yet obtained a final MACT determination, Sandy Creek's continued construction of a major source constitutes a violation of § 112(g)(2)(B).

## IV.  The District Court was Correct Not to Abstain

Finally, Sandy Creek asserts that the district court should have abstained, pursuant to *Burford*, 319 U.S. 315.  This Court "generally review[s] abstention decisions under an abuse of discretion standard."  *Sierra Club v. City of San Antonio*, 112 F.3d 789, 793 (5th Cir. 1997).  Given this standard of review, and the applicable law concerning *Burford* abstention, we would be hard pressed to conclude that the district court abused its discretion in refusing to abstain in this case.

"We start with the command that the federal courts have a 'virtually unflagging obligation to exercise the jurisdiction given them.'"  *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 313 (5th Cir. 1993) (quoting *Colorado River*

---

[14] In contrast to the permits that implement National Ambient Air Quality Standards, Congress created § 112's technology-based requirement of a case-by-case MACT determination "to accelerate the regulation of *hazardous* air pollutants."  S. Rep. No. 101-228 at 133 (1989) (emphasis added).  That is, Congress determined that creating a more stringent program for certain listed hazardous pollutants in § 112 was "appropriate" since, in contrast to PSD permits, section 112(g) "is for the control of extremely harmful air pollutants."  *Id.* at 140.  Consequently, TCEQ's determination that Sandy Creek was in compliance with the applicable PSD emission limitations in its permit says nothing about Sandy Creek's compliance with § 112(g)'s MACT requirement.  *See* § 112(b)(6) ("Prevention of significant deterioration: The provisions of part C of this subchapter (prevention of significant deterioration) *shall not apply* to pollutants listed under this section [§ 112].") (emphasis added).

15

No. 09-51079

*Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). As a result, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. This Court has recognized five factors for a court to weigh when considering whether to abstain under *Burford*. In *Wilson*, the Court listed these five *Burford* factors as follows:

> (1) whether the cause of action arises under federal or state law (finding abstention inappropriate where the case did not involve a state-law claim); (2) whether the case requires inquiry into unsettled issues of state law, or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review.

*Wilson*, 8 F.3d at 313 (internal quotation marks and citations omitted).

In the present case, consideration of these five factors support the district court's decision not to abstain. The first factor overwhelmingly affirms the district court's decision, since no state cause of action is involved in a federal CAA citizen suit. *See New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (holding that *Burford* abstention is not appropriate where the plaintiff's claim "does not involve a state-law claim," and rejecting the Fifth Circuit's declaration that "'the absence of a state law claim [is] not fatal'" to the application of *Burford* abstention) (quoting and *overturning New Orleans Public Serv., Inc. v. City of New Orleans*, 798 F.2d 858, 861-62 (5th Cir. 1986)). Whereas *Burford* consisted of a federal constitutional challenge to a state-created agency action, *see Burford*, 319 U.S. at 331, the present challenge raises no federal constitutional concerns about any state-created regulatory body–but instead utilizes a federal congressionally-created cause of action to

16

No. 09-51079

challenge a particular entity's failure to comply with a federally created regulatory scheme.[15]

Furthermore, the remaining factors weigh in favor of the district court's decision not to abstain. Although it is true that Congress created in the CAA "a comprehensive national program that made the States and the Federal Government partners in the struggle against air pollution," *GM Corp. v. United States*, 496 U.S. 530, 532 (1990), it is also true that Congress gave EPA the power to revoke a State's regulatory authority if that State does not abide by the CAA's federal statutory requirements. *See* 42 U.S.C. § 7410(c)(1)(B) (granting EPA the discretion to revoke a State's air permitting authority if the EPA "disapproves a State implementation plan submission in whole or in part"). Recently, the EPA formally announced it has disapproved Texas's State Implementation Plan, and consequently, TCEQ's continued authority to issue air permits under the CAA will soon (perhaps temporarily) expire.[16]

---

[15] Notably, Congress designed this regulatory scheme to specifically grant federal courts subject matter jurisdiction over suits like the one presently before us. The CAA's Citizen Suit provision, *see* 42 U.S.C. § 7604(a), (f), gives this Court jurisdiction over suits such as this one, where citizens challenge the construction of a "modified major emitting facility" *id.* at a(3), for which "any requirement under section 7411 or 7412 of this title" has not been met. *Id.* at (f)(3).

[16] On June 30, 2010, the EPA announced its formal disapproval of Texas's state permitting program run by TCEQ:

> Today, EPA announced final disapproval of the flexible permit program that the Texas Commission on Environmental Quality (TCEQ) had submitted for inclusion in its clean-air implementation plan. EPA has determined that this program does not meet several national Clean Air Act requirements that help to assure the protection of health and the environment.

*EPA Disapproves Texas Flexible Air Permit Program*, News Releases From Region 6, United States Department of Environmental Protection Agency (Jun. 30, 2010),

17

No. 09-51079

Consequently, the present case would make for an odd application of *Burford*, given that the federal district court would be abstaining from ruling when the state-regulatory body may soon lose its federally-granted authority to regulate.

In contrast to *Burford* and this Court's decision in *Sierra Club v. City of San Antonio*, the regulatory framework at issue here was created by the United States Congress–not a state legislative body.   Further, the legal question involves the application of federal law–not state law.   And finally, any need for a "coherent policy" is best attributed to the federal government, not the state of Texas.   One reason Congress decided to amend § 112 in 1990 and create a federally enforceable MACT requirement was to remedy the states' widely divergent approaches to regulating hazardous pollutants nationwide.   *See* H.R. Rep. No. 101-490, pt. 1, at 330 (1990) (noting that "the approaches taken by States to control air toxics vary considerably" and this has "produced a patchwork of differing standards").

Thus, for the reasons described above, we conclude that the district court did not abuse its discretion when it refused to abstain under *Burford*.

### CONCLUSION

For the foregoing reasons, we find that the district court did not err in its decision not to abstain under *Burford*, and because we find that Sandy Creek's ongoing construction of a coal-fired power plant with no final MACT determination violates CAA § 112(g)(2)(B), we REVERSE the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

---

http://yosemite.epa.gov/opa/admpress.nsf/e8f4ff7f7970934e8525735900400c2e/1d91bf2747c5682b8525775200626aa6!OpenDocument (last visited Sept. 09, 2010).

Case: 09-51079   Document: 00511303293   Page: 1   Date Filed: 11/23/2010

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

## BILL OF COSTS

NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5TH CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.

Sierra Club, Inc. et al.   v. Sandy Creek Energy Associates, L.P.   &   No. 09-51079

The Clerk is requested to tax the following costs against:   Sandy Creek Energy Associates, L.P.

| COSTS TAXABLE UNDER Fed. R. App. P. & 5th Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| Docket Fee ($450.00) | | | | 450.00 | | | | 450.00 |
| Appendix or Record Excerpts | 6 | 26 | .055 | 8.58 | 6 | 26 | .055 | 8.58 |
| Appellant's Brief | 9 | 92 | .055 | 45.54 | 9 | 92 | .055 | 45.54 |
| Appellee's Brief | | | | | | | | |
| Appellant's Reply Brief | 9 | 48 | .06 | 25.92 | 9 | 48 | .06 | 25.92 |
| Other: Binding (SEE ATTACHED) | | | | 44.90 | 24 | | 1.5 | 36.00 |
| | | | Total $ | 575.94   44.90 | | | | |

Costs are hereby taxed in the amount of $ 5122.04   this _____ day of _____

Costs are taxed in the amount of $ 5122.04

_____ day of  February, 2011.

LYLE W. CAYCE, CLERK

By _____
                    Deputy Clerk

State of _____
County of _____

I,  Sanjay Narayan,  do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This  14th  day of  December, 2010

_____
(Signature)

Attorney for  Sierra Club & Public Citizen

*SEE REVERSE SIDE FOR RULES GOVERNING TAXATION OF COSTS

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2010, I, Violet Lehrer,

served via the Court's electronic filing system, the attached Bill of

Costs for Plaintiffs-Appellants to the following:

Mr. Eric Groten
State Bar No. 08548360
Vinson & Elkins LLP
2801 Via Fortuna, Ste. 100
Austin, Texas 78746
(512) 542-8709 / 236-3272 (facsimile)
egroten@velaw.com

I also certify that: 1) the required privacy redactions have been

made pursuant to 5TH CIR. R. 25.2.13; 2) the electronic submission

is an exact copy of the paper document pursuant to 5TH CIR. R.

25.2.1; and 3) the document has been scanned for viruses with the

most recent version of a commercial virus scanning program and

is free of viruses.

I certify and declare under penalty of perjury under the laws of

the State of California that the foregoing is true and correct.

Executed on December 1, 2010.

            s/Violet Lehrer
        Violet Lehrer